UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DISCOUNT VIDEO CENTER, INC. DOING BUSINESS AS MAYHEM, | ) ) ) | Case No.: C 11-02694 CW (PSG) |
| Plaintiff, | ) ) | **ORDER GRANTING-IN-PART PLAINTIFF DISCOUNT VIDEO, INC.'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO RULE 26(F) CONFERENCE** |
| v. | ) ) | |
| DOES 1-5041, | ) ) | |
| Defendants. | ) ) ) | **(Re: Docket No. 6)** |

Plaintiff Discount Video Center, Inc. doing business as Mayhem ("Mayhem") applies *ex parte* for leave to take expedited and limited discovery prior to the Fed. R. Civ. P. 26(f) conference. The court heard oral argument on the application on September 22, 2011. Mayhem's application raises the same issues as those recently addressed by the court in *Diabolic Video Productions, Inc. v. Does 1-2099*[1] and *Boy Racer, Inc. v. John Does 2-52*.[2]  In each of those cases, the undersigned granted leave to take expedited discovery, but only as to the initial Doe.  The court severed or recommended severance of the remaining Does and recommended that the claims against the

---

[1]   *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 16).

[2]   *See Boy Racer, Inc. v. Does 2-52,* Case No. 5:11-02834 LHK, Order Granting-In-Part Plaintiff Boy Racer, Inc's *Ex Parte* Application for Leave to Take Limited Discovery Prior to Rule 26(f) Conference (Docket No. 12).

1  remaining be dismissed without prejudice and, if re-filed within 20 days, deemed a continuation of

2  the original action for purposes of the statute of limitations.

3      In *Diabolic,* the undersigned found that the copyright owner had not adequately explained

4  how or why the peer-to-peer architecture of the BitTorrent protocol differed from other file-sharing

5  protocols considered in *Leface Records, LLC,[3] Interscope Records,[4] BMG Music,[5] or Twentieth*

6  *Century Fox Film Corp.[6]* In each of those cases, the peer-to-peer nature of the protocol was

7  insufficient to justify joinder of dozens of otherwise unrelated defendants in a single action.

8      Under *Gillespie v. Civiletti*, before allowing expedited discovery to uncover the identity of

9  unnamed defendants, the district courts of this circuit must determine whether either of two

10 conditions applies. The first is whether the requested discovery would fail to uncover the identities

11 sought.[7] The second is whether the claim against the defendant could be dismissed.[8]

12     As to the first *Gillespie* condition,[9] whether or not the individuals identified are ultimately

13 liable under Mayhem's theory of infringement, the court is once again informed by the plaintiff that

14 the discovery sought here would uncover the identities sought. Mayhem seeks leave to subpoena

15 various Internet Service Providers ("ISP") associated with certain IP addresses to produce the

16 names, addresses, email addresses, phone numbers, and Media Access Control numbers associated

17

18

19     [3]    No. 5:07-cv-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

20     [4]    No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004).

21     [5]    No. 06-01579, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. Jul. 31, 2006).

22     [6]    No. C 04-04862, Docket No. 12 (N.D. Cal. Nov. 16, 2004).

23     [7]    *See Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980); *see also Columbia Ins. Co.*
       *v. SeesCandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) ("With the rise of the Internet has come the

24     ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark
       infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give

25     fictitious or incomplete identifying information. Parties who have been injured by these acts are likely
       to find themselves chasing the tortfeasor from [ISP] to ISP, with little or no hope of actually discovering

26     the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John
       Doe defendants or fictitious names and the traditional enforcement of strict compliance with service

27     requirements should be tempered by the need to provide injured parties with a forum in which they may
       seek redress for grievances.").

28     [8]    *See id.* at 642.

       [9]    *See id.*

1   with each IP address alleged to have conducted infringing activity.  The Nicolini Declaration[3]

2   explains that Copyright Enforcement Group, LLC's proprietary file sharing forensic software

3   captured the unique IP address by which each Doe Defendant allegedly infringed.  If provided with

4   the IP address and the date and time of the infringing activity, Mayhem asserts that the ISP can

5   identify the Doe Defendant because information is contained in the ISP's subscriber activity log

6   files.  Mayhem's claims notwithstanding, the court has serious doubts as to the efficacy of the ISP

7   subpoenas in uncovering the identity of the individuals alleged to have committed infringement.  As

8   the court has come to learn in yet another of the recent "mass copyright" cases, subscriber

9   information appears to be only the first step in the much longer, much more intrusive investigation

10   required to uncover the identity of each Doe Defendant.[4]  The reason is simple: an IP address

11   exposed by a wireless router might be used by the subscriber paying for the address, but it might not.

12   Roommates, housemates, neighbors, visitors, employees or others less welcome might also use the

13   same address.

14        Even if the court were not dubious of the plaintiff's ability to meet the first *Gillespie*

15   condition, it is not convinced that Mayhem can satisfy the second.  To address the second *Gillespie*

16   condition and to distinguish the technical architecture of BitTorrent from those file-sharing protocols

17   which other courts have found failed to justify joinder, Mayhem explains that users of the BitTorrent

18   protocol have a higher degree of interactivity and engage in deep and sustained collaboration with

19   their peers, as follows:

20        The process begins with one user accessing the Internet through an Internet Service
        Provider ("ISP") and intentionally making a digital file of the work available on the
21        Internet to the public from his or her computer.  This first file is often referred to as
        the first "seed."  I will refer to the person making this seed available as the "original
22        seeder."  Persons seeking to download such a work also access the Internet through
        an ISP (which may or may not be the same ISP as used by the original seeder) and
23        seek out the work on a P2P network.  With the availability of the seed, other users,
        who are referred to as "peers," access the Internet and request the file (by searching
24        for its title or even searching for the torrent's "hash"-as described below) and engage
        the original seeder and/or each group, sometimes referred to as a "swarm," and begin
25        downloading the seed file.  In turn, as each peer receives portions of the seed, most
        often that peer makes those portions available to other peers in the swarm.  Therefore,
26

27        [3]    *See* Docket No. 6-1.

28        [4]    *See Boy Racer, Inc. v. Doe 1,* Case No. 5:11-cv-02329 PSG, Order Denying Plaintiff's
        *Ex Parte* Motion for Leave to Take Further Expedited Discovery (Docket No. 21).

each peer in the swarm is at least copying and is usually distributing, as a follow-on seeder, copyrighted material at the same time. Of the over 20,000 infringers tracked in connection with several cases currently pending, at least 95% of the Doe defendants were uploading (i.e., distributing) illegal copies of our clients' motion pictures at the moment indicated by the Timestamp in the respective Exhibit A appended to each complaint, which is also true for this case. In P2P networks, the infringement may continue even after the original seeder has gone completely offline. Any BitTorrent client may be used to join a swarm.

Mayhem goes on to note:

As more peers join a swarm at any one instant, they obtain the content at even greater speeds because of the increasing number of peers simultaneously offering the content as seeders themselves for unlawful distribution. As time goes on, the size of the swarm varies, yet it may endure for a long period, with some swarms enduring for 6 months to well over a year depending on the opoularity of a particular motion picture. As a result, the original seed file becomes unlawfully duplicated multiple times by multiple parties, with a potentially exponential increase in the number of illegal copies of any copyrighted work. With respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same.

According to Mayhem, this greater extent of cooperation and concerted action among BitTorrent users than among users of other protocols makes joinder proper here.[5]

Even with the description of the BitTorrent technology provided by Mr. Nicolini, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Nicolini declaration argues at length about the concerted activity within a <u>given</u> swarm. Presumably he does so in response to the concern highlighted by Judge Ryu[6] and this court in *Boy Racer* that users in <u>different</u> swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. Even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses acted in concert with all of the others. In fact, the many weeks covering the activity associated with each of the addresses

---

[5]     This claim that BitTorrent is different from other protocols considered in earlier cases because of its swarming download functionality does not appear to be correct as a factual matter. For instance, the Kazaa and Gnutella protocols that were at issue in earlier cases have a swarming download feature that works similarly to BitTorrent's. *See, e.g.,* L. Jean Camp, "Peer to Peer Systems," in Hossein Bidgoli (ed.), *The Internet Encyclopedia* (Wiley, 2004), vol. 3, at 30. ("In order to increase the speed of downloads and distribute the load on peer-provid[ed] files Limeware uses swarming transfers. *See also,* Alex Jantunen, et al., "Peer to Peer Analysis: State of the Art" (Tampere University of technology, 2006) (noting that swarming supporting protocols include at least FastTrack, Gnutella, ED2K/Overnet and BitTorrent).

[6]     *See Pacific Century Intern. Ltd. v. Does 1-101,* Case No. 11-02533, Docket No. 7 (N.D. Cal. Jul. 8, 2011).

1    call into question whether there was ever common activity linking the 5,041 addresses in this case.

2    As the court noted in *Boy Racer,* in this age of instant digital gratification, it is unreasonable to

3    conclude that any one alleged infringer of the copyrighted work would patiently wait many weeks to

4    collect the bits of the work from 5,040 other cooperators.  At the very least, there is no proof that

5    bits from each of these 5,041 addresses were ever assembled into a single file.[7]  As the court

6    previously explained, under this court's precedent regarding other file sharing protocols, merely

7    infringing the same copyrighted work over this period is not enough.[8]  Finally, nothing in the

8    BitTorrent architecture changes the fact that each defendant also will likely have a different defense.

9    As the district court in *BMG Music* put it:

10           Comcast subscriber John Doe 1 could be an innocent parent whose internet access
             was abused by her minor child, while John Doe 2 might share a computer with a
11           roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be
             thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and
12           depriving them, and their artists, of the royalties they are rightly owed.[9]

13    Mayhem's motion is therefore GRANTED, but only as to Doe 1 and as follows.

14           IT IS HEREBY ORDERED that Mayhem is allowed to serve immediate discovery on Doe

15    1's ISP listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information

16    sufficient to identify Doe 1, including the name, addresses, telephone numbers, and email addresses

17    of Doe 1.  Mayhem's counsel shall issue its subpoena and shall include a copy of this order.  This

18

19           [7]    Empirical research shows that most BitTorrent users do not remain connected for very
20    long after their downloads are complete.  One large study observed that only 3.1% of BitTorrent users
      stayed connected (to upload to others) more than ten hours after their downloads completed; only 0.34%
21    stayed connected over 100 hours.  J.A. Pouwelse, P. Garbacki, D.H.J. Epema, and H.J. Sips, *The
      BitTorrent P2P File-Sharing System: Measurement and Analysis* at 4, in Proceedings of the 4th
22    International Workshop on Peer-to-Peer Systems, *available* at
      http://www.springerlink.com/content/1251rj2233u051.  Another study found that over 90% of users who
23    successfully downloaded a file remained connected for less than a single day, while many users who
      attempted to download the file gave up entirely and disconnected within the first few hours.  M. Izal,
24    G. Urvoy-Keller, E.W. Biersack, P.A. felber, A. Al Hamra and L. Garces-Erice, *Dissecting BitTorrent:
      Five Months in a Torrent's Lifetime* at 7, in Proceedings of the 5th International Workshop on Passive
25    and Active Network Management Proceedings of the 4th International Workshop on Peer-to-Peer
      Systems, *available at* http://www.springerlink.com/content/fg8hqw4136t0vtx9.

26           [8]    *See Diabolic Video Productions, Inc. v. Does 1-2099,* No. 5:10-cv-05865-PSG, Amended
27    Order Granting-In-Part Motion for Leave to Take Limited Discovery Prior to Rule 26(f) Conference
      (Docket No. 16).

28           [9]    *See BMG Music v. Does 1-203,* Case No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr.
      2, 2004).

1   subpoena shall be deemed an appropriate order under 47 U.S.C. § 551.

2        IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon it

3   to serve Doe 1 with a copy of the subpoena and a copy of this order.  The ISP may serve Doe 1 using

4   any reasonable means, including written notice sent to Doe 1's last known address, transmitted either

5   by first-class mail or via overnight service.  The ISP and Doe 1 each shall have 30 days from the

6   date of service to file any motions in this court contesting the subpoena (including a motion to quash

7   or modify the subpoena).  If that 30-day period lapses without Doe 1 or the ISP contesting the

8   subpoena, the ISP shall have 10 days to produce to Mayhem the information responsive to the

9   subpoena with respect to Doe 1.

10       IT IS FURTHER ORDERED that the ISP shall not assess any charge to Mayhem in advance

11  of providing the information requested in the subpoena, and that the ISP that receives a subpoena

12  and elects to charge for ths costs of production shall provide a billing summary and cost reports that

13  serve as a basis for such billing summary and any costs claimed by the ISP.

14       IT IS FURTHER ORDERED that the ISP shall preserve all subpoenaed information pending

15  the ISP delivering such information to Mayhem or the final resolution of a timely filed and granted

16  motion to quash the subpoena with respect to such information.

17       IT IS FURTHER ORDERED that any information disclosed to Mayhem in response to a

18  subpoena may be used by Mayhem solely for the purpose of protecting its rights under the Copyright

19  Act, 17 U.S.C. § 101 et seq.

20       IT IS FURTHER RECOMMENDED that Does 2-5,041 be severed from this action and

21  Mayhem's action against Does 2-5,041 be dismissed without prejudice.  The undersigned further

22  recommends that if Mayhem refiles separate complaints against Does 2-5,041 within 20 days of this

23  order, such actions should be deemed a continuation of the original action for purposes of the statute

24  of limitations.

25       **IT IS SO ORDERED.**

26  Dated:  September 23, 2011

27       _____

28       PAUL S. GREWAL
         United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28